IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PETER J. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO. 2:12cv85-MHT |
| ) | (WO) |
| ROBERT EIKE, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The *pro se* plaintiff, Peter J. Smith, brings this action solely pursuant to Title II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a, *et seq.*, alleging that he was discriminated against on the basis of his race (African-American) when he was asked to leave a Chick-fil-A restaurant. The court has jurisdiction over the complaint pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant in 42 U.S.C. § 2000a-6(a). Now pending before the court is the motion for summary judgment (Doc. 49) filed by the only remaining Defendant, Robert Eike. Despite being given an extended opportunity (*see* Doc. 55), Smith has filed nothing in response or in opposition to the motion. Having considered the motion, and for good cause, the court concludes that the motion is due to be granted.

**Standard of Review**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute[1]] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely

---

[1] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect [ ] the focus of a summary-judgment determination." Fed. R. Civ. P. 56(a), Advisory Committee Notes, 2010 Amendments.

2

disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–1577 (11th Cir. 1990) (quoting *Anderson*, *supra*). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by

appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that

the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U .S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

**Procedural History**

In his complaint, Smith alleged Chick-fil-A, Inc., violated Title II and Title VII of the Civil Rights Act of 1964 by denying him food service on the basis of his race. (Doc. 1). Smith subsequently amended his complaint to name Robert Eike, the owner and operator of a Chick-fil-A restaurant, as a defendant. (Doc. 19). On April 13, 2012, Smith and Chick-fil-

A, Inc., filed a stipulation of dismissal of Smith's claims against Chick-fil-A, Inc., and those claims were dismissed with prejudice. (Docs. 23, 24). On June 22, 2012, the court dismissed Smith's Title VII claim against Eike. (Doc. 35). Only Smith's Title II claim against Eike remains pending. (Doc. 35). The remaining Title II claim arises out of an incident that occurred in January, 2012, when a police officer instructed Smith to leave the Chick-fil-A fast food restaurant that is owned and operated by Eike. (Doc. 1; Doc. 19; Doc. 50-1 ¶ 2).

**Undisputed Facts**

Smith is homeless; he typically lives "on the streets" and does not stay in shelters. (Doc. 50-1 p. 6). He carries two large duffel bags with him that contain his personal possessions. (Doc. 50-1 p. 6). On January 11, 2012, Smith ordered, paid for, and ate breakfast at Eike's Chick-fil-A restaurant. (Doc. 50-1 p. 26; Doc. 50-1 ¶ 2). He also ate lunch and dinner at the restaurant that day, and he also worked on paperwork. (Doc. 50-1 p. 27). He stayed in the restaurant from the time he ordered breakfast (before 11:00 a.m.) until the restaurant closed at 9:00 p.m. (Doc. 50-1 p. 27-28; Doc. 50-1 ¶ 21). While Smith was in the restaurant on January 11, 2012, one of his large duffel bags blocked other customers' access to an adjacent table. (Doc. 50-2 ¶ 19). At some point during the day, one of Eike's assistant managers notified him that Smith had been in the restaurant for an extended period of time. (Doc. 50-2 ¶ 14). Eike became concerned that Smith was effectively occupying two tables that could be used by other customers. (Doc. 50-2 ¶¶ 4, 28). From Smith's unkempt appearance and his duffel bags, Eike suspected that Smith was

6

homeless and that he was loitering in the restaurant to shelter himself from the cold weather. (Doc. 50-2 ¶ 20). Eike generally does not allow customers to remain in the restaurant for prolonged periods of time because doing so would negatively affect service to other customers. (Doc. 50-2 ¶¶ 9, 29). Thus, while customers are allowed to take time to enjoy their food, they are expected to leave the restaurant within a reasonable period of time after finishing their meals. (Doc. 50-2 ¶¶ 7-8). However, on January 11, 2012, Eike did nothing to stop Smith's extended presence in the restaurant during the store's operating hours. (Doc. 50-2; Doc. 50-1 p. 29).

The night of January 11, 2012, Smith slept on a bench within walking distance of the Chick-fil-A. (Doc. 50-1 p. 29). On January 12, 2012, Smith awoke, cleaned up a bit, and returned to Chick-fil-A with his duffel bags, where he again ordered and paid for breakfast. (Doc. 50-1 p. 30, 33). He was provided with all items of food and drink that he ordered, and he again sat in a booth with his duffle bags and proceeded to eat and complete paperwork. (Doc. 50-2 ¶¶ 24-26). While Smith was eating, an African-American assistant manager of the restaurant approached him and told him that "maybe an hour after [he] finished, you know in the future, [he] should probably, you know, leave." (Doc. 50-1 p. 33-34, 38). Smith told the assistant manager that he planned to order lunch or "something else." (Doc. 50-1 p. 34).

Because Smith had occupied a table for the entire day on January 11, Eike assumed that he planned to do the same thing on January 12. (Doc. 50-2 ¶ 27). Concerned that

7

Smith's extended presence for another day would affect service to other customers and block access to two tables, Eike consulted a City of Montgomery police officer who was in the restaurant purchasing food. (Doc. 50-2 ¶¶ 28-30). Eike told the police officer that Smith had stayed in the restaurant for an extended period of time the previous day and that he had remained in the restaurant long after he finished eating the food he ordered. (Doc. 50-2 ¶ 31). Eike told the officer that he was concerned that Smith was homeless and loitering in the restaurant, and he asked for the officer's advice on how to handle the situation. (Doc. 50-2 ¶¶ 32-33). Eike did not, however, ask the officer to remove Smith from the restaurant. (Doc. 50-2 ¶ 33). The officer told Eike that he "would handle the situation." (Doc. 50-2 ¶ 34). Smith did not hear the conversation between Eike and the officer. (Doc. 50-1 pp. 36-37).

After speaking with Eike, the officer went to Smith's table and sat across from him. (Doc. 51-1 pp. 31-32). The officer leaned toward Smith and, in "an authoritative manner," told Smith that "management" wanted him to leave. (Doc. 51-1 pp. 32, 35, 36-37). Smith stated that he planned to order something else before he left, but the officer told him that "they want you to leave now." (Doc. 51-1 p. 32). The officer also told Smith that "any restaurant in Alabama has the right to refuse service to anyone at any time." (Doc. 50-1 p. 32). Smith then started to take his food tray to the garbage can, but the police officer told him to leave it for the Chick-fil-A staff to remove. (Doc. 50-1 p. 32). Embarrassed, Smith gathered his two large bags. (Doc. 50-1 p. 32). As he was leaving, one of the customers yelled, "You ought to kick him out." (Doc. 50-1 pp. 32, 36). The customer's comment

8

caused Smith to feel further humiliated. (Doc. 50-1 p. 32).

Smith is African-American. (Doc. 50-1 p. 13, 38). Eike and the police officer are Caucasian. (Doc. 50-1 p. 38).

**Discussion**

Title II of the Civil Rights Act of 1964, as amended, creates a private right of action for injunctive relief[2] for persons who suffer race discrimination at a place of public accommodation. *See* 42 U.S.C. §§ 2000a & 2000a-3(a); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). Smith alleges that Eike violated Title II by having him removed from the restaurant because he is African-American.[3] (Doc. 1).

According to Smith, when he was asked to leave the restaurant, no one made "any reference to race." (Doc. 50-1 p. 36). At his deposition, Smith described the alleged evidence of racial discrimination as follows:

Q: Do you think you were required to leave the restaurant on account of your race?

Smith: Based on what I saw, yes.

---

[2] In his complaint, Smith requests relief in the form of "[i]njunctive relief and unspecified damages." (Doc. 1 p. 2). To the extent that Smith's request for "unspecified damages" is intended to refer to monetary damages, Smith is not entitled to such relief under Title II. *Newman*, 390 U.S. at 402 ("When a plaintiff brings an action under [Title II], he cannot recover damages.").

[3] In his deposition, Smith also stated that he felt that any discrimination that might have occurred on the basis of his status as a homeless person was "against the law." (Doc. 50-1 p. 40). However, Smith's complaint alleges only race discrimination. (Doc. 1). Further, Title II only prohibits discrimination "on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. Title II does not prohibit discrimination on grounds that a person is homeless. *Id.*

9

Q:          Do you have any evidence to support that belief?

Smith:      Only evidence I have is that the lead manager was of another race, and also the police officer was of another race, so, and also I didn't see anybody else having to leave.

Q:          Was the member of management that spoke with you, was he Caucasian?

Smith:      No. But he's not the lead manager, the other guy is the lead manager.

Q:          Well the member of management that spoke with you on January 12, 2012, what was his race?

Smith:      He's the same race I am. He was African-American. But again, he's not the lead manager, he just works in the back.

Q:          But that's the only member of management that spoke with you on January 12, 2012, right?

Smith:      Right, right. I've been in management before. I've been in an authority position. I wouldn't go up to anybody myself. I would always delegate it. That's pretty much the way it – pretty much the way it's done.

Q:          But you don't know that there was any delegation that took place, do you?

Smith:      Not in, well let's just say I didn't witness anything but, you know, it was kind of implied.

. . . .

Q:          Sitting here today, is there any reason you haven't already told me that you believe you were discriminated against on account of your race other than the fact that the manager of the Chick-fil-A was Caucasian?

Smith:      Well, no, you've got the manager, you've got the person actually

>>carrying out the removal, everything pretty much is – you know, points to that.

(Doc. 50-1 pp. 38-39).

Thus, at most, the evidence of racial discrimination in this case is, in Smith's words, "kind of implied" and, therefore, indirect and circumstantial. (Doc. 50-1 pp. 38-39). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (holding that direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption," whereas circumstantial evidence "suggests, but does not prove, a discriminatory motive"). In evaluating motions for summary judgment in discriminatory treatment cases where the evidence of intentional discrimination is only indirect, courts typically rely on the burden-shifting scheme set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cf. Afkhami v. Carnival Corp.*, 305 F. Supp.2d 1308, 1321 (S.D. Fla. 2004) (applying the *McDonnell Douglas* burden-shifting analysis in a Title II case); *cf. also Hornick v. Noyes*, 708 F.2d 321, 325 n. 8 (7th Cir.1983) ("Because of th[e] similarity [of Title II] to the Title VII paradigm-as well as the absence of recent Title II precedent-this case was tried in accordance with the allocation of burdens and order of proof set forth in *McDonnell Douglas* . . . and clarified in [*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)]. . . . We agree that *Burdine* provides the best available guidance for handling a case of this sort.").

Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case that the defendant intentionally subjected him to illegal discrimination; this is usually

11

accomplished by a demonstration that the defendant treated the plaintiff differently than other similarly-situated people who were not in the plaintiff's protected class. *McDonnell Douglas*, 411 U.S. at 802; *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327-28 (11th Cir. 2011); *see also Allen v. CLP Corp.*, 460 Fed. Appx. 845, 848-849 (11th Cir. 2012) (holding that summary judgment was appropriate on a claim arising under Title II of the Civil Rights Act where the plaintiff failed to provide evidence that he was treated differently than similarly situated individuals). Once the plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for its actions and must produce some evidence in support of that reason. *McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to meet this burden of production, the plaintiff, to survive summary judgment, must then demonstrate by a preponderance of the evidence that the proffered reason is merely a pretext for discrimination. *Id.* at 804. The *McDonnell Douglas* analysis is useful because it "provides an invaluable method of 'progressively . . . sharpen[ing] the inquiry into the elusive factual question of intentional discrimination.'" *Hall v. Ala. Ass'n of School Bds.*, 326 F.3d 1157, 1167 (11th Cir. 2003) (quoting *Burdine*, 450 U.S. at 255 n. 8). Applying the *McDonnell Douglas* analysis is particularly appropriate in this case because Smith appears to stake his Title II claim on indirect inferences from fact that he "didn't see anybody else having to leave" the restaurant and the fact that he was not of the same race as Eike or the police officer. (Doc. 50-1 pp. 38-39).

Evidence of discriminatory *intent* is required to establish a *prima facie* case of race

discrimination, *Hall*, 326 F.3d at 1167; therefore, the mere fact that the Eike is of a different race than Smith, without more, is not sufficient to establish a *prima facie* case. *Cf. Billingsley v. Jefferson County*, 953 F.2d 1351, 1353 (11th Cir. 1992) (rejecting an argument that racial discrimination can only occur when the plaintiff and defendant are of different races). Aside from the fact that Eike and the police officer are both white, the *only* other evidence Smith cited[4] as an indication of discriminatory intent was that he "didn't see anybody else having to leave." (Doc. 50-1 pp. 38-39). Although no other customers were required to leave the restaurant, there is no evidence that any of the other customers had, like Smith, remained in the restaurant for an extended period of time contrary to Chick-fil-A's policy of allowing customers to remain for a reasonable time after finishing their meals. (Doc. 50-2 ¶¶ 7-8). Therefore, the record contains no evidence of a similarly-situated comparator that could give rise to a reasonable inference of discriminatory intent. *Cf. Velez v. Levy World Ltd. P'ship*, 182 Fed. Appx. 929, 931 (11th Cir. 2006) ("Although we view all reasonable inferences in the light most favorable to Plaintiffs [who were suing under Title II], given the lack of any evidence about the earlier Caucasian [comparator] group's service [at a restaurant], we cannot make an inference about how promptly the [comparator] group was served. Therefore, Plaintiffs do not establish this earlier group of Caucasian patrons was a similarly situated group that received better treatment.").

Additionally, Smith has also suggested that an onlooking customer's loud comment

---

[4] Smith did not respond to the summary judgment motion; however, in his deposition, he did outline the evidence that he thought supported an inference of discrimination. (Doc. 50-1 pp. 38-39).

that Chick-fil-A "ought to kick [Smith] out" somehow creates an inference of racially discriminatory intent on the part of Chick-fil-A. (Doc. 50-1 pp. 32, 36). The comment of the bystander does not support a *prima facie* case because there is no indication that the remark was racially motivated and, in any event, the remark is not evidence of "markedly hostile conduct *on the part of restaurant employees*." *Allen*, 460 Fed. Appx. at 849 (emphasis added). *Cf. Burdine*, 450 U.S. at 1093 (holding that the *McDonnell Douglass* analysis ultimately requires plaintiff in a discrimination case to demonstrate that "*the defendant* intentionally discriminated against" him (emphasis added)).

Because Smith has failed to provide evidence of a similarly-situated comparator who was treated differently, and because he has presented no other evidence indicative of discriminatory intent, his discrimination claim cannot survive summary judgment. *See Smith*, 644 F.3d at 1328 (holding that, in cases where a plaintiff cannot establish a *prima facie* case, summary judgment is "appropriate where no other evidence of discrimination is present" (Citation and internal quotation marks omitted).

Further, even if Smith could somehow establish a *prima facie* case of discriminatory intent, his discrimination claim cannot survive summary judgment because the record contains *no* evidence to rebut Eike's uncontroverted showing that Smith was asked to leave the restaurant not on the basis of race, but because he was effectively single-handedly occupying two tables for an extended period of time, thereby interfering with the restaurant's ability to serve other customers. (Doc. 50-2 ¶¶ 7-8, 28-30). In the absence of any indication

14

of pretext, asking a customer to leave merely to make service available to other customers is not a violation of Title II. 42 U.S.C. §§ 2000a (prohibiting "discrimination or segregation on the ground of race, color, religion, or national origin"). "[A] manager's decision to show some preference for a *group* of diners who have yet to order over a *single* diner who has already been served and has had ample time to finish his [meal], does not evidence discrimination, absent some more telling conduct such as abusive language or outright hositility" by restaurant employees. *Allen*, 460 Fed. Appx. at 848-49 (emphasis omitted).

Accordingly, Eike's motion for summary judgment is due to be granted. *See Smith*, 644 F.3d at 1329 (holding that, to survive summary judgment, the plaintiff in a racial discrimination case must present "circumstantial evidence that creates a triable issue concerning the [defendant's] discriminatory intent"); *see also Allen*, 460 Fed. Appx. at 848-49 ("Given that [the plaintiff] has staked his § 2000a claim entirely on the treatment he received as compared to the treatment the group of white men received, his failure to establish that these men were similarly situated, or to provide evidence of markedly hostile conduct on the part of restaurant employees, was a proper basis for granting summary judgment." (Emphasis added.)); *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1291 (11th Cir. 2005) (affirming summary judgment where the plaintiff in a discrimination case provided no evidence that the defendant's proffered nondiscriminatory reasons for its actions were pretextual).

**CONCLUSION**

Accordingly, it is the Recommendation of the Magistrate Judge that the motion for summary judgment (Doc. 49) filed by Defendant Robert Eike be **GRANTED** and that Smith's Title II claim against Eike be **DISMISSED** with prejudice.

Further, as Eike is the only remaining defendant and no other claims are pending in this case, it is the Recommendation of the Magistrate Judge that this case be **DISMISSED** with prejudice.

**ORDERED** that the parties shall file any objections to this Recommendation on or before **January 23, 2013**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on

16

September 30, 1981.

    Done this 9th day of January, 2013.

                                     /s/Charles S. Coody
                            CHARLES S. COODY
                            UNITED STATES MAGISTRATE JUDGE